# Exhibit A

Civil Action No. _____

Date Filed _____

Attorney's Address

_____

_____

_____

Name and Address of Party to be Served

_____

_____

_____

_____

Superior Court ☐

State Court ☐

Hall County, Georgia

_____

_____

_____

**Plaintiff**

VS.

_____

_____

**Defendant**

_____

_____

_____

**Garnishee**

### SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐

I have this day served the defendant_____personally with a copy
of the within action and summons.

**NOTORIOUS** ☐

I have this day served the defendant_____by leaving
a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____described as follows
age, about_____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the
residence of defendant.

**CORPORATION** ☐

Served the defendant _____a corporation
by leaving a copy of the within action and summons with_____
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the
door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same
in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said
summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the
place stated in the summons.

**NON EST** ☐

Diligent search made and defendant _____
not to be found in the jurisdiction of this County.

This _____ day of _____, 20 _____.

_____
**DEPUTY**

SHERIFF DOCKET _____ PAGE _____

_____
**COUNTY, GEORGIA**

**WHITE: Clerk    CANARY: Plaintiff Attorney    PINK: Defendant**

SC-2 Rev. 85

# SUPERIOR COURT OF HALL COUNTY
## STATE OF GEORGIA

**E-FILED IN OFFICE**
CLERK OF SUPERIOR COURT
HALL COUNTY, GEORGIA
**2019CV1613C**
JUDGE JASON J. DEAL
AUG 20, 2019 10:47 AM

*Charles Baker*
Charles Baker, Clerk
Hall County, Georgia

CIVIL ACTION NUMBER   2019CV1613C

Fendley, Scott Mr.
Fincher, Joel Mr.

---

**PLAINTIFF**

**VS.**

Badger Daylighting Corp

---

**DEFENDANT**   .

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Mark W Alexander**
> **Stewart Melvin & Frost**
> **PO Box 3280**
> **Gainesville, Georgia 30503**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 20th day of August, 2019.**

Clerk of Superior Court

*Charles Baker*

---

**Charles Baker, Clerk**
**Hall County, Georgia**

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
HALL COUNTY, GEORGIA

**2019CV1613C**

JUDGE JASON J. DEAL
AUG 20, 2019 10:47 AM

*Charles Baker*
Charles Baker, Clerk
Hall County, Georgia

**IN THE SUPERIOR COURT OF HALL COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| **Scott Fendley and Joel Fincher** | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| **v.** | ) | Civil Action No.: 2019 C V 1613C |
| | ) | |
| **Badger Daylighting Corp.,** | ) | |
| *Defendant.* | ) | |

### PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION

Plaintiffs Scott Fendley ("Fendley") and Joel Fincher ("Fincher") file this Original Complaint and Application for Preliminary Injunction and Permanent Injunction against Defendant Badger Daylighting Corp ("Defendant" or "Badger") and respectfully shows as follows:

### I.  INTRODUCTION

1.  Fendley and Fincher bring this lawsuit seeking a declaratory judgment pursuant to O.C.G.A. § 9-4-2, *et seq.*, preliminary and permanent injunctive relief regarding certain post-employment restrictive covenants between Fendley and Badger and between Fincher and Badger. Specifically, Badger required, as a condition of continued employment, that Fendley and Fincher each execute an overbroad Confidentiality, Non-Solicitation and Non-Competition Agreement (the "Fendley Agreement") and Confidentiality and Non-Competition Agreement (the "Fincher Agreement")(collectively "Agreements").[1]

2.  Absent relief from this Court, Fendley would have to leave the state of Georgia, and Fincher would have to leave the country to find work that does not violate Badger's overbroad restrictive covenants.

---

[1] As an initial matter, Fendley and Fincher do not concede that HydroExcavators, LLC is one of Badger's competitors in the hydro excavation industry.

3.      Further, Fendley's Agreement contains unenforceable choice of law and choice of forum provisions – requiring him to litigate under Indiana law, and in an Indiana court. Fincher's agreement purports to require Fincher to litigate under Ohio law, although that agreement contains no choice of forum provision.

4.      Plaintiffs believe that Badger seeks to enforce these unlawful covenants because Defendant is actively seeking to enforce its restrictive covenants against other former Badger employees.[2] The Agreements contain multiple restrictive covenants including non-competition and non-solicitation of customers, restrictions that violate Georgia's Restrictive Covenants in Contracts law related to employer/employee agreements.[3]

5.      The non-competition restriction is unenforceable because it lacks any reasonable description of competitive activity and geographic scope. Likewise, the non-solicitation of customers is unenforceable because it applies in full force to all Badger customers and not just those with whom Fendley and Fincher had material contact during their employment, and unlawfully prohibits even the unsolicited *acceptance* of business from Badger's purported customers. Additionally, Fendley's Agreement contains a tolling provision which expands the duration of his non-solicitation restrictions for an indefinite time and is unenforceable.

6.      Finally, removing the offending provisions in the non-competition and non-solicitation of customers provisions is futile and Georgia's blue pencil laws do not allow the court to re-write offending provisions to make them enforceable under these circumstances.

---

[2] *See Badger Daylighting Corp. v. Gary Palmer*, Case No., 1:19-cv-2106-SEB-MJD, United States District Court for the Southern District of Indiana, Indianapolis Division. That case is in Indiana because Badger initiated the litigation there against Palmer, relying on the unenforceable choice of forum clause.

[3] The Agreement also contains a non-solicitation of employees restriction that is not relevant to the resolution of Plaintiffs' request for declaratory and injunctive relief in this Complaint.

Accordingly, Plaintiffs brings this action against Defendant seeking injunctive relief to prevent it from initiating legal proceedings to enforce the overbroad restrictions in the Agreement.

## II. THE PARTIES

7.    Plaintiff Scott Fendley is an individual resident of Georgia residing at 146 Skunk Hollow Rd, Cleveland, Georgia, 30528.

8.    Plaintiff Joel Fincher is an individual resident of Georgia residing at 186 Holliness Campground Road, Cleveland, Georgia 30528.

9.    Defendant Badger Daylighting Corp is a Canadian Corporation that is incorporated in the State of Nevada and maintains its principal place of business in the United States in Brownsburg, Indiana. Badger Daylighting Corp is also a registered entity with the Georgia Secretary of State and may be served through its registered agent for service of process, C T Corporation System, 289 S. Culver St, Lawrenceville, Georgia 30046.

## III. JURISDICTION AND VENUE

10.    This Court has original jurisdiction over this action under Ga. Const. art. VI, sec. 4, par. 1 and O.C.G.A. § 15-6-8 because this is a case in equity.

11.    The Court may exercise personal jurisdiction over Badger under O.C.G.A. § 9-10-91 because it transacts business in Georgia related to the actions giving rise to this lawsuit.

12.    Venue is proper in Hall County pursuant to the provisions of O.C.G.A. § 14-2-510(b)(2) because this suit is based on a contract that was performed in this county. Both Fendley and Fincher worked at Badger's location in Hall County until their resignations on August 19, 2019.

## IV.    FACTS

13.    Badger is a Canadian company that provides hydro excavation services throughout Canada and the United States. Badger provides hydro excavating services for a number of industries and markets including oil and gas, energy, industrial, construction, transportation and numerous government agencies.

### A. Fendley's Employment with Badger

14.    Badger originally hired Fendley as an Operations Manager. As an Operations Manager, Fendley had varying duties including: (1) scheduling jobs for work crews in Atlanta, Georgia and surrounding areas; (2) liaising with customers in the field to ensure the crews were meeting the customer's expectations; and (3) following up with customers on completed work to ensure work was completed to customer's satisfaction.

15.    On April 11, 2019, Badger offered Fendley a position as an Area Manager for its hydro excavating operations in the Atlanta, Georgia area. As a condition of his continued employment, Badger required Fendley to execute the Fendley Agreement[4], which contained restrictive covenants including a non-competition provision, and non-solicitation of customers provision, among others. *See* Fendley's Confidentiality, Non-Solicitation and Non-Competition Agreement with Badger attached as Exhibit A. Fendley is unsure if Badger also executed the Fendley Agreement. The relevant provisions in Fendley's Agreement contain the following overbroad restrictions:

---

[4] While Fendley has a copy of an agreement he signed, he is not sure if the agreement was fully executed by Badger and thus seeks expedited discovery to determine if a fully executed agreement exists. Fendley reserves the right to withdraw these allegations upon completion of discovery if Badger is unable to produce a fully executed agreement.

1. <u>Covenant Against Competition</u>. The parties each acknowledge that the relationship of Employee with the Corporation will be one by which the Employee has had access and/or will have access to certain confidential and proprietary information integral to the Business, and the services Employee has rendered and/or will render to the Corporation will be of a unique and special character. In view of this relationship with the Corporation, Employee covenants and agrees that during his/her employment, and for a period of twenty-four (24) months thereafter, Employee shall not, within the Restricted Area: (a) directly or indirectly compete in any manner with the Business of the Corporation, or own, manage, operate, control, be employed by, participate in, or be connected in any manner with, in any competitive capacity, the ownership, management, operation or control of any person, business or entity which competes directly or indirectly with the Business of the Corporation; and (b) render any services to any person, business or other entity to which Confidential Information will inevitably be disclosed as a result of Employee's rendering of such services during or after Employee's employment with the Corporation if and to the extent permitted by law. As used herein, the term "Restricted Area" shall include the following geographic areas: (i) the state(s) where Employee provided services for Corporation during Employee's employment; and (ii) the physical location of any customer of Corporation for whom Employee performed services. As used herein, the term "directly or indirectly" shall be construed in its broadest sense.

* * * *

4. <u>Non-Solicitation of Customers</u>. During the term of Employee's employment by the Corporation, and for a period of twenty-four (24) months ("24-month non-solicitation period") following the Employee's termination or resignation from the Corporation, the Employee will not directly or indirectly solicit, accept, or divert business from any customer of the Corporation or attempt to convince any such customer to acquire services from another person or entity which are similar to the services provided by the Corporation. As used herein, the term "customer" shall mean (i) any person or entity to whom the Corporation has provided services during the preceding twelve months prior to the start of the 24-month period non-solicitation period; (ii) any person or entity to whom Employee provided services during the preceding twelve months prior to the start of the 24-month non-solicitation period; or (iii) any such persons or entities known by Employee to have been targeted or contacted by the Corporation for the sale of such services during the preceding twelve months prior to the start of the 24-month non-solicitation period.

* * * *

7. <u>Remedies</u>. Employee acknowledges that the limitations contained herein are reasonable and will not prohibit him/her from earning a livelihood. In the event of an actual or threatened breach by the Employee of the provisions of this Agreement, the Corporation shall be entitled to an injunction restraining the Employee from such breach without the posting of a surety bond of any type and shall also be entitled to recover from Employee all reasonable attorneys fees and costs incurred by the Corporation in enforcing any provision in this

Agreement. Nothing herein, however, shall be construed as prohibiting the Corporation from pursuing any other remedies available to the Corporation for such breach or threatened breach, including the recovery of damages from the Employee. (The period of time during which Employee is prohibited from engaging in the non-solicitation of employees and customers as set forth above, shall be extended by any length of time during which Employee is in breach of any of such covenants.) Employee acknowledges Corporation's right to decide how to handle employee breaches of restrictions the same as or similar to those found in this Agreement, and, as a result, Employee agrees that Employee could not have and does not have any defense to Corporation's enforcement of the restrictions set forth in this Agreement due to Corporation's alleged acquiescence in such other breaches. The restrictions in paragraphs one through four (1-4) above survive the termination of Employee's employment with Corporation as expressly set forth therein. Employee further acknowledges and agrees that no material or other breach of any contractual or legal duty by Corporation under this Agreement or otherwise shall be held sufficient to excuse or terminate Employee's obligations under paragraphs one through four (1-4) of this Agreement or to preclude Corporation from obtaining injunctive relief.

*See* Exhibit A.

16.    As an Area Manager, Fendley's duties included managing the operations in Badger's Atlanta office. Specifically, Fendley supervised the Operations Manager and approximately 70 additional employees who performed various roles for Badger including one (1) Outside Sales Representative, Office Managers and Field Operators. Fendley's responsibilities also included generating bids for existing and potential customers in Northern Georgia. Although some of those customers were repeat clients, most customer inquiries came from website inquiries, cold calls by the customer, or referrals that Fendley received from Badger's corporate office. As an Area Manager, Fendley was responsible for operations occurring in Northern Georgia and another Badger Area Manager, located in Savannah, was responsible for Badger's operations in Southern Georgia. Fendley's position as an Area Manager did not include operations outside of Georgia

17.    Fendley's Agreement also contains an Indiana choice-of-law and forum selection clause. Fendley Agreement, ¶ 14.

18.     On August 19, 2019, Fendley resigned from Badger. HydroExcavators, LLC ("Hydro-X") plans to hire Fendley as a Regional Manager of the Company's Southwest Region on August 20, 2019. Hydro-X provides non-destructive excavation services as an alternative to mechanical or hand digging. Fendley's duties with Hydro-X do not overlap with the duties and customers with which he did business during his employment relationship with Badger.

## B. Fincher's Employment with Badger

19.     Badger hired Fincher on October 1, 2013 as an Area Manager for its Georgia operations. In January 2016, Badger promoted Fincher to District Business Development Manager. In approximately January 2017, Badger promoted Fincher to Strategic Account Manager for its Southeast power operations. In approximately October 2018, Badger promoted Fincher to his current role as North American Utility Manager.

20.     In performing his role as Badger's North American Utility Manager, Fincher was responsible for Badger's utility operations in the power and gas distribution industry throughout the United States and Canada. Specifically, Fincher worked primarily internally with Badger's Sales Managers to draft Master Service Agreements for current and prospective customers and establish rates. Additionally, Fincher worked internally to make sure Badger met customer specific requirements and expectations.

21.     As a condition of his continued employment, Fincher believes Badger required him to execute a similar but slightly different Agreement[5] from Fendley's Agreement, which contained restrictive covenants including a non-competition provision, and non-solicitation of customers

---

[5] While Fincher has an unsigned copy of an agreement, he is not sure if he and Badger fully executed the agreement, and thus seeks expedited discovery to determine if a fully executed agreement exists. Fincher reserves the right to withdraw these allegations upon completion of discovery if Badger is unable to produce a fully executed agreement.

provision, among other things. *See* Fincher's Confidentiality and Non-Competition Agreement with Badger attached as Exhibit B. The relevant provisions in the Fincher Agreement contain the following overbroad restrictions:

1. Covenants Against Competition. The parties each acknowledge that the relationship of Employee with the Corporation will be one by which the Employee has had access and/or will have access to certain confidential and proprietary information integral to the Business, and the services Employee has rendered and/or will render to the Corporation will be of a unique and special character. In view of this relationship with the Corporation, Employee covenants and agrees that during his employment, and during the Period (as hereinafter defined), Employee shall not, directly or indirectly:

(a) solicit, accept, or divert business from any customer of the Corporation or attempt to convince any such customer to acquire services from another person or entity which are similar to the services provided by the Corporation. As used herein, the term "customer" shall mean (i) any person or entity to whom the Corporation has provided services during the preceding twelve months prior to the start of the Period; (ii) any person or entity to whom Employee provided services during the preceding twelve months prior to the start of the Period; or (iii) any such persons or entities known by

Employee to have been targeted or contacted by the Corporation for the sale of such services during such twelve months;

(b) within the Restricted Area, compete in any manner with the Business of the Corporation, or own, manage, operate, control, be employed by, participate in, or be connected in any manner with, in any competitive capacity, the ownership, manageme operation or control of any person, business or entity which compeles directly or indirectly with the Business of the Corporation. As used herein, the term "Restricted Area" shall include the following geographic areas: (i) the United States; (ii) Canada; (iii) the state(s) where the Employee resided during Employee's employment with Corporation; (iv) the state(s) where Employee provided services for Corporation durin Employee's employment; and (v) the physical location of any customer of Corporation for whom Employee performed services; and

(c) solicit, encourage or induce any employee, consultant, contractor or sub-contractor of the Corporation to terminate their relationship with Corporation.

As used herein, the term "directly or indirectly" shall be construed in its broade sense and the term "Period" shall mean two (2) years from the date Employee ceases to be employed by the Corporation, regardless of cause.

22.     Fincher's Agreement contains an Ohio choice-of-law provision but docs not purport to select a forum. Fincher Agreement ¶ 10.

23.     On August 19, 2019, Fincher resigned from Badger. HydroExcavators, LLC ("Hydro-X") plans to hire Fincher as an Equity Alliance Power Director on August 20, 2019.

Fincher's duties with Hydro-X do not overlap with the duties and customers with which he did business during his employment relationship with Badger.

## V. CAUSES OF ACTION

### A. Count I – Declaratory Judgment

24. Plaintiffs, without waiving the foregoing, reallege and incorporate the allegations set forth above.

25. Each Plaintiff is uncertain and insecure about his legal rights and status under the Agreements. Each Plaintiff is also uncertain and insecure about his legal rights due to Defendant's threats to enforce the restrictive covenants and prevent them from working.

26. The restrictions at issue in the Agreements are invalid, overbroad and unenforceable as a matter of law and public policy. Accordingly, Fendley and Fincher are entitled to maintain employment in the hydro excavation industry without the limitations Badger seeks to impose on them. Additionally, competitors of Defendant are entitled to hire Fendley and Fincher to work in the hydro excavation industry without subjecting themselves to liability.

27. On the other hand, Defendant will clearly claim that the restrictive covenants in the Agreements are valid, as it is doing in the Palmer litigation.

28. The non-competition provisions in each Agreement are unenforceable because they are overbroad in scope and geographic limitation. Specifically, both non-competition provisions prohibit Fendley and Fincher from competing with Badger *in any manner* or being connected with a competitor of Badger *in any capacity*. In other words, according to the language of the Agreements, neither Fendley nor Fincher could work as a *janitor* for Hydro-X or any other competitor.

29.     As written, the non-competition provision prohibits Fendley from working in any state he provided services or had customers during his employment with Badger. Badger's legitimate protectable interest does not range this far under the Georgia Restrictive Covenants in Contracts statute, the Georgia common law, or the public policy of this state.

30.     The non-competition provision is also unenforceable as to Fincher. As written, the non-competition provision prohibits Fincher from working in the United States, Canada, or any state he provided services or had customers during his employment with Badger. Badger's legitimate protectable interest does not range this far under the Georgia Restrictive Covenants in Contracts statute, the Georgia common law, or the public policy of this state.

31.     Fendley's and Fincher's non-solicitation of customers provision are equally unenforceable. Specifically, the Agreements prohibit Plaintiffs from soliciting *every* customer for whom Badger performed services as well as Badger customers with which Plaintiffs had no contact during their employment.

32.     Likewise, the non-solicitation of customers provision unlawfully prohibits Plaintiffs from merely *accepting* unsolicited business from any Badger customer.

33.     Similarly, the non-solicitation of customers provision seeks to restrict Plaintiffs from soliciting customers that they knew Badger targeted or contacted regardless of whether Plaintiffs had any involvement in the targeting or contact. Plaintiffs' compliance with this provision is impossible because Plaintiffs have no way of knowing each person or entity with which Badger conducted business over the previous twelve months.

34.     Further, Badger's attempt to indefinitely toll the period of time that Fendley is prohibited from soliciting customers is also unenforceable. *See* Exhibit A at ¶ 7.

35.     As a result of the threat that Badger will seek to enforce the restrictive covenants and attempt to prevent Fendley and Fincher from working for Hydro-X in their desired profession, Plaintiffs request that the Court enter a judgment declaring the provisions of the Agreements at issue in this lawsuit unenforceable and relieve them of the uncertainty about the legal status of their employment.

36.     Plaintiffs request a declaration that the restrictive covenant provisions in the Agreements are subject to Georgia law and, as such, unenforceable because they are overbroad, unreasonable and constitute an impermissible restraint on trade against the public policy of Georgia.

B.     Count II – Application for Injunctive Relief

37.     Plaintiffs, without waiving the foregoing, reallege and incorporate the allegations set forth above.

38.     Defendant's threats to seek judicial enforcement of the restrictive covenants in the Agreement affect these Georgia residents with respect to their ability to earn a living in their chosen profession in this state. Because the restrictive covenants in the Agreements at issue in this matter are unenforceable under Georgia law, the Court should enjoin Defendant from seeking to enforce the restrictive covenants in the Agreements against Fendley and Fincher.

39.     Preliminary injunctive relief is necessary to maintain the status quo pending adjudication of the issues advanced in this lawsuit.

40.     Plaintiffs will suffer irreparable harm without the requested injunctive relief because they will be uncertain about the legal status of their employment and prevented from working in their chosen professions. Defendant's unlawful Agreements will prevent Plaintiffs from obtaining employment elsewhere in their chosen profession.

41.     Plaintiffs have shown a likelihood of success on the merits because, as identified above, the restrictive covenants at issue in this lawsuit are overbroad and unenforceable as a matter of law. Further, although Georgia courts have the ability to excise offending provisions to modify an agreement, Badger's unlawful restrictions in the Agreement are permanently flawed and, thus, not subject to reformation.

42.     Plaintiffs do not have an adequate legal remedy to address Badger's unlawful Agreements. Indeed, under Badger's oppressive restrictions and absent relief from this Court, Fendley would have to switch professions completely or move to another state in which he has not performed services for Badger or in which none of Badger's customers have operations. Worse, Fincher will have to switch professions completely or move away from the United States and Canada.

43.     The balancing of the equities justifies issuance of an injunction in Plaintiffs' favor. If Defendant is not enjoined from enforcing the overbroad restrictive covenants, Plaintiffs will be unable to work in their chosen professions in their chosen residences, which will result in irreparable and immediate harm. On the other hand, an injunction in Plaintiffs' favor will not prejudice Defendant because it does not have protectable business interests sufficient to justify the unlawful restrictions it seeks to impose on Plaintiffs. Additionally, an injunction in Plaintiffs' favor will maintain the last legal status quo between the parties until the Court can take full evidence and determine whether to issue a permanent injunction.

44.     For the foregoing reasons, Plaintiffs request a preliminary injunction and, ultimately, a permanent injunction against Defendant preventing it from attempting to enforce the unlawful restrictions in the Agreement against Fendley.

45.     Each Plaintiff is willing to post a bond in the amount the Court deems appropriate.

46.     Plaintiffs request that the Court set their application for preliminary injunction for hearing at the earliest date possible and, after the hearing, to issue a preliminary injunction against Defendant.

## CONCLUSION

Plaintiffs Scott Fendley and Joel Fincher respectfully request that the Court declare their Non-Competition and Non-Solicitation of Customers provisions in the Agreements against public policy and, therefore, unenforceable in their entirety and issue a preliminary injunction and permanent injunction against Badger Daylighting Corporation enjoining it from attempting to enforce the Non-Competition and Non-Solicitation of Customers provisions in the Agreements.

This 20th day of August, 2019.

*/s/ Mark Alexander*
Mark Alexander
Georgia Bar: 008930
Stewart, Melvin & Frost
PO Box 3280
Gainesville, Georgia 30503
770-536-0101 Phone
malexander@smf-law.com

889933-1

## CONFIDENTIALITY, NON-SOLICITATION AND NON-COMPETITION AGREEMENT

THIS CONFIDENTIALITY, NON-SOLICITATION AND NON-COMPETITION AGREEMENT (the "Agreement") is made and entered into by and among BADGER DAYLIGHTING CORP., a Nevada corporation (the "Corporation") and Scott Fendley (the "Employee").

### Recitals

A.      The Corporation is engaged in the business of providing hydrovac excavation services and equipment sales throughout the United States and Canada (the "Business").

B.      Employee will be or will continue to be an at-will employee of the Corporation will have or has a duty of trust and loyalty to the Corporation and may also hold fiduciary duties to the Corporation. In such capacity has had and/or will have access to confidential, proprietary and trade secret information and materials integral to the welfare of the Business, that is not publically available, that has significant commercial value, and which the Company desires to maintain as confidential.

### Agreement

NOW, THEREFORE, in consideration of the foregoing Recitals, the mutual covenants and promises contained herein, each act done pursuant hereto, Employee's at-will employment by the Corporation, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Covenant Against Competition. The parties each acknowledge that the relationship of Employee with the Corporation will be one by which the Employee has had access and/or will have access to certain confidential and proprietary information integral to the Business, and the services Employee has rendered and/or will render to the Corporation will be of a unique and special character. In view of this relationship with the Corporation, Employee covenants and agrees that during his/her employment, and for a period of twenty-four (24) months thereafter, Employee shall not, within the Restricted Area: (a) directly or indirectly compete in any manner with the Business of the Corporation, or own, manage, operate, control, be employed by, participate in, or be connected in any manner with, in any competitive capacity, the ownership, management, operation or control of any person, business or entity which competes directly or indirectly with the Business of the Corporation; and (b) render any services to any person, business or other entity to which Confidential Information will inevitably be disclosed as a result of Employee's rendering of such services during or after Employee's employment with the Corporation if and to the extent permitted by law. As used herein, the term "Restricted Area" shall include the following geographic areas:  (i) the state(s) where Employee provided services for Corporation during Employee's employment; and (ii) the physical location of any customer of Corporation for whom Employee performed services. As used herein, the term "directly or indirectly" shall be construed in its broadest sense.

2.      Confidential Information.

(a)      Through the expenditure of significant money, time, and effort, the Corporation possesses, and will continue to possess, information which has been created,

1


EXHIBIT
4

discovered, developed by or otherwise become known to the Corporation (including information discovered or made available by subsidiaries, affiliates or joint ventures of the Corporation or in which property rights have been assigned or otherwise conveyed to the Corporation) which information has commercial value to the Corporation, including but not limited to trade secrets, innovations, equipment designs, processes, computer codes, data, know how, improvements, discoveries, developments, techniques, marketing plans, strategies, costs, current and prospective customers, and current and prospective client lists, price lists, vendor lists, and/or any information Employee has reason to know the Corporation would like to treat as confidential for any purpose, such as maintaining a competitive advantage or avoiding undesired publicity, whether or not developed by Employee ("Confidential Information").

(b)     In exchange for employment or continuing employment with the Corporation and for providing Employee with access to the Corporation's Confidential Information, Employee will not, at any time: (i) disclose to others, or use, or allow anyone else to disclose or use any Confidential Information except as may be necessary in the performance of Employee's employment with the Corporation, unless previously authorized in writing by the Corporation or unless it is ascertainable or obtained from public or published sources or was available to the Employee on a non-confidential basis prior to any disclosure; and (ii) by any means, transfer or forward outside of Corporation's computer network any Corporation information, including, without limitation, Confidential Information, without the prior written consent of Corporation.

(c)     Upon termination of employment, Employee shall return to the Corporation any and all property and records of the Corporation in his/her possession, at the Corporation, at his personal residence or elsewhere. The property covered hereby includes, but is not limited to, all property belonging to Corporation, including its Confidential Information, the original and all copies of any Corporation documents, the original and all copies of any computer tapes, disks, thumb drives or external hard drives containing any Corporation information, credit cards, keys to the Corporation's facility or equipment, and any and all other Corporation material. This obligation also includes the return of Company Information and property stored on any personally owned storage device used by Employee (including Employee's computer, (personal, laptop, tablet or phone) and including storage in the cloud), as directed by the Corporation.

(d)     Pursuant to the Defend Trade Secrets Act of 2016, Employee acknowledges that he/she may not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a Trade Secret that: (a) is made (i) in confidence to a Federal, State, or Local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document that is filed in a lawsuit or other proceeding, if such filing is made under seal.

3. Non-Solicitation of Employees.  During the term of Employee's employment by the Corporation, and for a period of twenty-four (24) months following the Employee's termination or resignation from the Corporation, the Employee will not directly or indirectly solicit, encourage or induce any employee, consultant, contractor or sub-contractor of the Corporation to terminate their relationship with Corporation.  As used herein, the term "directly or indirectly" shall be construed in its broadest sense.

4. <u>Non-Solicitation of Customers</u>. During the term of Employee's employment by the Corporation, and for a period of twenty-four (24) months ("24-month non-solicitation period")_following the Employee's termination or resignation from the Corporation, the Employee will not directly or indirectly solicit, accept, or divert business from any customer of the Corporation or attempt to convince any such customer to acquire services from another person or entity which are similar to the services provided by the Corporation. As used herein, the term "customer" shall mean (i) any person or entity to whom the Corporation has provided services during the preceding twelve months prior to the start of the 24-month period non-solicitation period; (ii) any person or entity to whom Employee provided services during the preceding twelve months prior to the start of the 24-month non-solicitation period; or (iii) any such persons or entities known by Employee to have been targeted or contacted by the Corporation for the sale of such services during the preceding twelve months prior to the start of the 24-month non-solicitation period.

5. <u>Employee Inventions</u>. Employee covenants that any idea, invention, technique, modification, process, improvement, industrial design, work of authorship, or mask work created, conceived, or developed by Employee, either solely or in conjunction with others, that relates in any way to, or is useful in any manner in, the Business of Corporation (collectively, "Employee Invention") will belong exclusively to Corporation. Employee acknowledges that all Employee Inventions are works made for hire and the property of Corporation, including any copyrights, patents, or other intellectual property rights pertaining thereto. If it is determined that any such works are not works made for hire, Employee hereby assigns to Corporation all of Employee's right, title, and interest, including all rights of copyright, patent, and other intellectual property rights, to or in such Employee Inventions. Employee covenants that Employee will promptly (i) disclose to Corporation in writing any Employee Invention; (ii) assign to Corporation or to a party designated by Corporation, at Corporation's request and without additional compensation, all of Employee's right to the Employee Invention for the United States and all foreign jurisdictions; (iii) execute and deliver to Corporation such applications, assignments, and other documents as Corporation may request in order to apply for and obtain patents or other registrations with respect to any Employee Invention in the United States and any foreign jurisdictions; and (iv) sign all other papers necessary to carry out the above obligations.

6. <u>No Expectation of Privacy</u>. During Employee's employment with the Corporation, Employee acknowledges and agrees that he/she has no expectation of privacy with respect to the Corporation's telecommunications, networking or information processing systems (including, without limitation, stored files, e-mail messages, text messages, and voice messages). Employee agrees that at any time, without notice, Corporation may monitor the Employee's use of such systems and any files or messages created, sent or received by me on any of those systems. Employee agrees that any property located on Corporation's premises and owned by Corporation, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by the Corporation at any time, without notice. Employee also understands and agrees that the Corporation may monitor any information posted on publicly available social media, and that the Employee has no expectation of privacy with regard to such postings. These measures are necessary to allow the Corporation to maintain the security of its Confidential Information.

7. <u>Remedies</u>. Employee acknowledges that the limitations contained herein are reasonable and will not prohibit him/her from earning a livelihood. In the event of an actual or threatened breach by the Employee of the provisions of this Agreement, the Corporation shall be entitled to an injunction restraining the Employee from such breach without the posting of a surety bond of any type and shall also be entitled to recover from Employee all reasonable attorneys fees and costs incurred by the Corporation in enforcing any provision in this

Agreement. Nothing herein, however, shall be construed as prohibiting the Corporation from pursuing any other remedies available to the Corporation for such breach or threatened breach, including the recovery of damages from the Employee. The period of time during which Employee is prohibited from engaging in the non-solicitation of employees and customers as set forth above, shall be extended by any length of time during which Employee is in breach of any of such covenants. Employee acknowledges Corporation's right to decide how to handle employee breaches of restrictions the same as or similar to those found in this Agreement, and, as a result, Employee agrees that Employee could not have and does not have any defense to Corporation's enforcement of the restrictions set forth in this Agreement due to Corporation's alleged acquiescence in such other breaches. The restrictions in paragraphs one through four (1-4) above survive the termination of Employee's employment with Corporation as expressly set forth therein. Employee further acknowledges and agrees that no material or other breach of any contractual or legal duty by Corporation under this Agreement or otherwise shall be held sufficient to excuse or terminate Employee's obligations under paragraphs one through four (1-4) of this Agreement or to preclude Corporation from obtaining injunctive relief.

      8.   Revocation of Authorization. Immediately upon the termination of Employee's employment with Corporation for any reason or no reason, Employee is not permitted to access Corporation's computer network or website for any purpose. Any and all authorizations for use of the Corporation's computer network or website are considered revoked as of the termination of Employee's employment with Corporation. The provisions of this section apply to the computer network and website of any affiliate of Corporation.

      9.   Assignment. This Agreement is personal to Employee, and Employee may not assign Employee's rights (or delegate Employee's duties) under this Agreement without the prior written consent of Corporation. Corporation may assign all of Corporation's rights under this Agreement to Corporation's successors and assigns. Employee acknowledges and agrees that unless specifically stated otherwise by Corporation in writing, any such assignment by Corporation does not constitute the Employee's termination from Corporation for purposes of the 24-month non-solicitation periods set forth in paragraphs 2 and 3 of this Agreement.

      10.  Waiver of Breach and Severability. The waiver by the Corporation of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by the Employee. If any part of this Agreement is for any reason held to be excessively broad as to time, duration, geographical scope, activity or subject, the parties agree that any such part should be construed by a court, by limiting or reducing it, so as to be enforceable to the greatest or broadest extent compatible with applicable law as it then exists. In the event any provision of this Agreement is found to be invalid or unenforceable, it may be severed from this Agreement, and the remaining provisions of this Agreement shall continue to be binding and effective, or the court may reform the unenforceable provision in a manner which is enforceable to the maximum extent permitted by law and is consistent with the general intention of the parties.

      11.  Entire Agreement.    This Agreement contains the parties' entire agreement concerning the subject matter hereof and supersedes all prior agreements between the parties concerning the subject matter hereof, except that if the restrictions in this Agreement are not enforceable for any reason, then any prior agreement with the same or similar restrictions may be enforced by Corporation without prejudice due to the execution of this Agreement. This Agreement may not be changed orally, but only in writing, signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.

4

12. Notices.  Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by registered mail to the Employee's last-known residence, in the case of the Employee, or its principal office, in the case of the Corporation.

13. Governing Law and Venue.  This Agreement shall be governed by and construed in accordance with the laws of the State of Indiana.  The parties further agree that the exclusive venue for any dispute between them regarding this Agreement shall be in the State of Indiana, where Corporation has its principal place of business.

14. Voluntary Execution.  The Employee acknowledges that he has had the right to secure legal counsel to review and discuss the legal implications of this Agreement prior to its execution and that he has entered into this Agreement voluntarily.  No party to this Agreement shall be deemed to be the author of this Agreement and there shall be no presumption that this Agreement is to be construed for or against any party to this Agreement on the basis of the authorship or drafting of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the date signed by Employee.

Date: 4/11/17

_Scott Fendley_
Scott Fendley
"Employee"

BADGER DAYLIGHTING CORP.

Date: _____

By: _____

Its: _____
"Corporation"

Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.



# CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

THIS CONFIDENTIALITY AND NON-COMPETITION AGREEMENT (the "Agreement") is made and entered into by and among **BADGER DAYLIGHTING CORP.**, a Nevada corporation (the "Corporation") and :                                     ").

## Recitals

A.     The Corporation is engaged in the business of providing hydrovac excavation services and equipment sales throughout the United States and Canada (the "Business").

B.     Employee will be or will continue to be an at-will employee of the Corporation and in such capacity has had and/or will have access to confidential and proprietary information and materials integral to the welfare of the Business which the Company desires to maintain as confidential.

## Agreement

NOW, THEREFORE, in consideration of the foregoing Recitals, the mutual covenants and promises contained herein, each act done pursuant hereto, Employee's at-will employment by the Corporation, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Covenants Against Competition.  The parties each acknowledge that the relationship of Employee with the Corporation will be one by which the Employee has had access and/or will have access to certain confidential and proprietary information integral to the Business, and the services Employee has rendered and/or will render to the Corporation will be of a unique and special character.  In view of this relationship with the Corporation, Employee covenants and agrees that during his employment, and during the Period (as hereinafter defined), Employee shall not, directly or indirectly:

(a)  solicit, accept, or divert business from any customer of the Corporation or attempt to convince any such customer to acquire services from another person or entity which are similar to the services provided by the Corporation.  As used herein, the term "customer" shall mean (i) any person or entity to whom the Corporation has provided services during the preceding twelve months prior to the start of the Period; (ii) any person or entity to whom Employee provided services during the preceding twelve months prior to the start of the Period; or (iii) any such persons or entities known by



Employee to have been targeted or contacted by the Corporation for the sale of such services during such twelve months;

(b) within the Restricted Area, compete in any manner with the Business of the Corporation, or own, manage, operate, control, be employed by, participate in, or be connected in any manner with, in any competitive capacity, the ownership, management, operation or control of any person, business or entity which competes directly or indirectly with the Business of the Corporation. As used herein, the term "Restricted Area" shall include the following geographic areas: (i) the United States; (ii) Canada; (iii) the state(s) where the Employee resided during Employee's employment with Corporation; (iv) the state(s) where Employee provided services for Corporation during Employee's employment; and (v) the physical location of any customer of Corporation for whom Employee performed services; and

(c) solicit, encourage or induce any employee, consultant, contractor or sub-contractor of the Corporation to terminate their relationship with Corporation.

As used herein, the term "directly or indirectly" shall be construed in its broadest sense and the term "Period" shall mean two (2) years from the date Employee ceases to be employed by the Corporation, regardless of cause.

2. Confidentiality. The Corporation possesses, and will continue to possess, information which has been created, discovered, developed by or otherwise become known to the Corporation (including information discovered or made available by subsidiaries, affiliates or joint ventures of the Corporation or in which property rights have been assigned or otherwise conveyed to the Corporation) which information has commercial value to the Corporation, including but not limited to trade secrets, innovations, equipment designs, processes, computer codes, data, know how, improvements, discoveries, developments, techniques, marketing plans, strategies, costs, customers, and client lists, or any information Employee has reason to know the Corporation would like to treat as confidential for any purpose, such as maintaining a competitive advantage or avoiding undesired publicity, whether or not developed by Employee ("Confidential Information"). In exchange for the restrictions contained in this Agreement, Corporation has exposed and/or will expose Employee to Confidential Information. Unless previously authorized in writing or instructed in writing by the Corporation, Employee will not, at any time, disclose to others, or use, or allow anyone else to disclose or use any Confidential Information (except as may be necessary in the performance of Employee's employment with the Corporation), unless and until and then only to the extent that, such Confidential Information has become ascertainable or obtained from public or published sources or was available to the Employee on a non-confidential basis prior to any disclosure, provided that the source of such material is or was not bound by any obligation of confidentiality to the Corporation. Employee will not, at any time during or after Employee's employment with Corporation, render any services to any person, business or other entity to which Confidential Information will inevitably be disclosed as a result of Employee's rendering of such services. Employee will not, by any means, transfer or forward outside of Corporation's computer network any Corporation

those found in sections 1 and 2, and, as a result, Employee agrees that Employee could not have and does not have any defense to Corporation's enforcement of the restrictions in sections 1 and 2 due to Corporation's alleged acquiescence in such other breaches. The restrictions in sections 1 and 2 survive the termination of Employee's employment with Corporation. Employee further acknowledges and agrees that no material or other breach of any contractual or legal duty by Corporation under this Agreement or otherwise shall be held sufficient to excuse or terminate Employee's obligations under sections 1 and 2 of this Agreement or to preclude Corporation from obtaining injunctive relief.

5.    Revocation of Authorization. Immediately upon the termination of Employee's employment with Corporation for any reason or no reason, Employee is not permitted to access Corporation's computer network or website for any purpose. Any and all authorizations for use of the Corporation's computer network or website are considered revoked as of the termination of Employee's employment with Corporation. The provisions of this section apply to the computer network and website of any affiliate of Corporation.

6.    Assignment. This Agreement is personal to Employee, and Employee may not assign Employee's rights (or delegate Employee's duties) under this Agreement without the prior written consent of Corporation. Corporation may assign all of Corporation's rights under this Agreement to Corporation's successors and assigns. Employee acknowledges and agrees that unless specifically stated otherwise by Corporation in writing, any such assignment by Corporation does not constitute the Employee's termination from Corporation for purposes of the post-employment periods of restriction provided in section 1.

7.    Waiver of Breach and Severability.   The waiver by the Corporation of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by the Employee. If any part of this Agreement is for any reason held to be excessively broad as to time, duration, geographical scope, activity or subject, the parties agree that any such part should be construed by a court, by limiting or reducing it, so as to be enforceable to the greatest or broadest extent compatible with applicable law as it then exists. In the event any provision of this Agreement is found to be invalid or unenforceable, it may be severed from this Agreement, and the remaining provisions of this Agreement shall continue to be binding and effective, or the court may reform the unenforceable provision in a manner which is enforceable to the maximum extent permitted by law and is consistent with the general intention of the parties.

8.    Entire Agreement.    This Agreement contains the entire agreement of the parties concerning the subject matter hereof and supersedes all prior agreements between the parties concerning the subject matter hereof, except that if the restrictions in this Agreement are not enforceable for any reason, then any prior agreement with the same or similar restrictions may be enforced by Corporation without prejudice due to the execution of this Agreement. This Agreement may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.

C:\My Documents\Conf and Non-Compete Blank.doc

9. Notices.  Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by registered mail to the Employee's last-known residence, in the case of the Employee, or its principal office, in the case of the Corporation.

10.  Governing Law and Venue.  This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio.

11. Voluntary Execution.  The Employee acknowledges that he has had the right to secure legal counsel to review and discuss the legal implications of this Agreement prior to its execution and that he has entered into this Agreement voluntarily.  No party to this Agreement shall be deemed to be the author of this Agreement and there shall be no presumption that this Agreement is to be construed for or against any party to this Agreement on the basis of the authorship or drafting of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the date signed by Employee.

Date: _____   _____     _____

BADGER DAYLIGHTING CORP.

Dat__   _____   : i   _

"Corporation"

C:\ My Documents\Conf and Non-Compete Blank.doc